AO 106 (Rev. 04/010) Application for Search Warrant                    AUTHORIZED AND APPROVED/DATE:  JE 7-11-2024.

# UNITED STATES DISTRICT COURT
for the
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| PROPERTY KNOWN AS: | ) | |
| Information Associated with | ) | |
| Cell Phone Number 405-437-9156 | ) | Case No: MJ-24-558-STE |
| That is Stored at Premises | ) | |
| Controlled by AT&T | ) | |

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property *(identify the person or describe property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed (*identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is *(check one or more)*:
- ☒ evidence of the crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 1343 | Fraud by Wire |
| 18 U.S.C. § 1028A | Aggravated Identity Theft |
| 18 U.S.C. §§ 1956-57 | Laundering of Monetary Instruments |

The application is based on these facts:

See attached Affidavit of Special Agent Philip Galván, Treasury Inspector General for Tax Administration, which is incorporated by reference herein.

- ☒ Continued on the attached sheet(s).
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

*Applicant's signature*

Philip Galván
Special Agent
Treasury Inspector General for Tax Administration

Sworn to before me and signed in my presence.

Date: **Jul 12, 2024**

*Judge's signature*

City and State: Oklahoma City, Oklahoma

SHON T. ERWIN, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH **CELL PHONE NUMBER 405-437-9156** THAT IS STORED AT PREMISES CONROLLED BY **AT&T** | **Case No. M-24-_ 558-STE____**<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Philip Galván, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by **AT&T**, a wireless provider headquartered 11760 U.S. Highway 1, Suite 300, North Palm Beach, 33408.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require **AT&T** to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2.      I am a Special Agent with the U.S. Department of the Treasury, Treasury Inspector General for Tax Administration ("TIGTA").  TIGTA is tasked with ensuring the integrity of the Internal Revenue Service ("IRS") and its infrastructure security and protecting the IRS against external attempts to corrupt tax administration.  TIGTA Special

Agents are certified criminal investigators with authority to carry firearms, make arrests, execute warrants, and administer oaths. I am assigned as a Criminal Investigator within TIGTA's Cybercrimes Investigations Division, with a post of duty at Dallas, TX. I have been employed by TIGTA since 2020 and a Federal Special Agent since 2017. I was previously employed as a police officer and detective in the Commonwealth of Virginia from 2008 to 2020. I have a Bachelor of Science degree in Criminal Justice.

3.     I have previously submitted for and obtained previous search warrants to **AT&T** for other, unrelated investigations, and thus familiar with the common data returns as provided by **AT&T**. Due to my training and experience, I am able to identify illegal activities across a wide variety of services.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of **18 U.S.C. § 1344 - Bank fraud; 18 U.S.C. § 1343 - Fraud by wire; 18 U.S.C. § 1028A - Aggravated identity theft; and 18 U.S.C. §§ 1956-57 - Laundering of monetary instruments**, have been committed by **CAROL KIMBERLY PINLAC** and other unknown suspects**.** There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes, as further described in Attachment B.

2

## JURISDICTION

6.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7.    On or about July 01, 2024, Oklahoma City Police Department (OKCPD) Detective Houston DILBECK spoke with Great Plains Bank (GPB) employees Katy KIRK (Branch Operations Manager) and Kolby LOFTIN (Account Service Representative).

8.    On June 21, 2024 at approximately 1324 hours, a Black male suspect and an Asian female suspect (later identified as **CAROL KIMBERLY PINLAC**) entered GPB-Midtown OKC (601 NW 13th St, Oklahoma City, OK 73103) together. The black male and **PINLAC** wanted to open a new banking account. LOFTIN spoke with the suspects, who took turns talking. LOFTIN said the suspects talked about opening a business account, and the suspects wanted to open a free checking account to become established with the bank.

9.    LOFTIN said that for the suspects to open an account, she had to enter them into the bank's system. GPB provided both suspects with "All About You!" information forms, on which both suspects listed their phone number as **405-437-9156**.

10.    The black male suspect provided LOFTIN with a Massachusetts Driver's License #S47590997 with the name of STANLEY MIRANDA (Date of Birth: 12/20/70), with a photo on it resembling the unknown suspect, as proof of identification.

11.    **PINLAC** provided LOFTIN with a Massachusetts Driver's License #S37298343 with the name of KATHRYN MIRANDA (Date of Birth: 12/04/1991), with a photo of **PINLAC** on it.

12.    LOFTIN said that since these identification cards were from Massachusetts, both suspects she needed a second identity. The black male suspect presented a Social Security Card #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 with the name STANLEY MIRANDA on it as a second form of identity. **PINLAC** presented a Social Security Card #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 with the name KATHRYN MIRANDA as a second form of identity.

13.    The black male suspect presented GPB with United States Treasury Check #4045-50583145 in the amount of $2,088,528.40. The listed payees were "STAN B & KATHRYN L MIRANDA, 20 ST PETERS ROAD ST MARGARETS, TWICKENHAM TW1 1 QX, UNITED KINGDOM 800." GBP opened a new account for the suspects, account #2052011674, with listed account holders KATHERYN[1] MIRANDA AND STANLEY MIRANDA, at 9321 SW 33rd Pl, Oklahoma City, OK, 73179, the address

---

[1] Affiant Note: this is a different spelling than KATHRYN.  This appears to be a clerical error by the bank.

provided by the suspects in the account opening paperwork. The U.S. Treasury Check was deposited into the newly opened account.

14.    KIRK reported LOFTIN consulted her about to the large deposit, since KIRK is LOFTIN's manager, and KIRK spoke with the suspect(s). KIRK asked how they heard about GPB. **PINLAC** told KIRK that **PINLAC**'s family banks with GPB. KIRK made small talk with the suspects while LOFTIN copied the documents. KIRK explained that since the amount was so large, only $5,525.00 would be accessible on Monday, June 24, 2024. The rest of the money would be held for nine days. Other banking options were discussed, and the male suspect took multiple business cards located in the branch. The suspects did not ask for money when the account was opened.

15.    KIRK reported having a "bad feeling" and placed an extended hold on the check. On June 25, 2024, the check was returned to the bank by the U.S. Treasury, notifying the bank that the check had already been paid out. TIGTA records reveal the check to be an unaltered copy of the IRS check #4045-50583145. Physical analysis of the check is needed to determine if it is the original (and thus stolen) check or an unaltered, duplicate copy.

16.    Government database queries revealed the Massachusetts Driver's license number provided to GPB by **PINLAC** returned to another names individual. The driver's license number provided by the black male returned to STANLEY MIRANDA, but with a different individual's face depicted in the photograph. **PINLAC** and the black male appear to have obtained counterfeit driver's licenses in support of the scheme.

5

17.    On June 27, 2024, KIRK reported that she received a call from telephone number **405-437-9156**. The female caller said she was having issues with her online banking account, and KIRK recognized the caller as the female suspect who had recently opened the account with the U.S. Treasury check. KIRK put the suspect on hold and later disconnected the call (KIRK reports that she hung up because she did not want to accidently disclose that the check was under investigation). Someone called back from telephone number **405-437-9156** on the same day at 10:10, 10:12, 10:15, 10:16, 10:17, and 10:21 hours. A female voice left a voicemail on one of these calls, identifying herself as KATHYRN MIRANDA stating that they had been disconnected and requesting further assistance with their online banking. They provided a call back number of **405-437-9156.**

18.    On July 02, 2024, a person representing herself as KATHRYN MIRANDA called KIRK again, asking again about online banking. KIRK told KATHRYN MIRANDA that there were documents she needed to complete at the bank. KATHRYN MIRANDA replied that she could not return to the bank then, advising she was in another state.

19.    On July 02, 2024, I contacted **AT&T** Global Legal Demands Center and confirmed that phone number **405-437-9156 is** on their network. I subsequently submitted preservation request to **AT&T**.

20.    In my training and experience, I have learned that **AT&T** is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail, text, and multimedia messages for **AT&T** subscribers may be located on the computers of **AT&T**. Further, I

am aware that computers located at **AT&T** contain information and other stored electronic communications belonging to unrelated third parties.

21.    Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of **AT&T** for weeks or months.

22.    Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by **AT&T** for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

23.    Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail

7

addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

24. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

25. Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas)

received a radio signal from the cellular device and thereby transmitted or received the communication in question.

26.    Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates, times and sometimes, places, of payments and the means and source of payment (including any credit card or bank account number).

27.    In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

9

28.     As explained below, information stored at the wireless provider, including that described above, may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the data pertaining to a particular cellular device that is retained by a wireless provider can indicate who has used or controlled the cellular device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, data collected at the time of account sign-up, information relating to account payments, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled a cellular device at a relevant time. Further, such stored electronic data can show how and when the cellular device and associated cellular service were accessed or used. Such "timeline" information allows investigators to understand the chronological context of cellular device usage, account access, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the cellular device owner. Additionally, information stored by the wireless provider may indicate the geographic location of the cellular device and user at a particular time (e.g., historic cell-site location information; location integrated into an image or video sent via text message to include both metadata and the physical location displayed in an image or video). Last, stored electronic data may provide relevant insight into the state of mind of the cellular device's owner and/or user as it relates to the offense under

10

investigation. For example, information relating to the cellular device in the possession of the wireless provider may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

29. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require **AT&T** to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

30. Based on the forgoing, I request that the Court issue the proposed search warrant.

31. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

32. The government will execute this warrant by serving the warrant on **AT&T**. Because the warrant will be served on **AT&T**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

33.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

Philip Galván
Special Agent
Treasury Inspector General for Tax Administration

Subscribed and sworn to before me on _____July 12_____, 2024

_____
U.S. MAGISTRATE JUDGE SHON T. ERWIN

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with **CELL PHONE NUMBER 405-437-9156** that is stored at premises owned, maintained, controlled, or operated by **AT&T**, a wireless provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, 33408.

# ATTACHMENT B

## Particular Things to be Seized

### I.  Information to be disclosed by AT&T

To the extent that the information described in Attachment A is within the possession, custody, or control of **AT&T**, , regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to **AT&T** or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), **AT&T** is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      All voice mail, text, and multimedia messages **from May 01, 2024 to Present** stored and presently contained in, or on behalf of the account or identifier;

b.      All existing printouts from original storage of all of the text messages described above;

c.      All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from **May 01, 2024 to Present**;

d.    All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message **May 01, 2024 to Present**

e.    All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

f.    Detailed billing records, showing all billable calls including outgoing digits, from **May 01, 2024 to Present**;

g.    All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from **May 01, 2024 to Present**;

h.    Incoming and outgoing telephone numbers, from **May 01, 2024 to Present**;

i.    All records indicating the services available to subscribers of individual accounts and/or identifiers described above; and

j.    All records pertaining to communications between **AT&T** and any person regarding the account or identifier, including contacts with support services and records of actions taken.

2

The Provider is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

## II.  Information to be seized by the Government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of **18 U.S. Code § 1344 - Bank fraud; 18 U.S.C. § 1343 - Fraud by wire; 18 U.S.C. § 1028A - Aggravated identity theft; and 18 U.S.C. §§ 1956-57 - Laundering of monetary instruments** involving **CAROL KIMBERLY PINLAC** and other unknown suspects since **May 01 2024**, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.      The planning of committing the above violations, to include communications between **PINLAC** and unknown other suspect(s), and preparatory steps taken in furtherance of the scheme, including but not limited to the obtaining of real and counterfeit U.S. Treasury Checks, counterfeit identity documents for both individuals and/or businesses (i.e. Social Security Documents, State Driver's Licenses, U.S. Treasury Documents)

b.      Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crimes under investigation;

c.      Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

3

d.     Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

e.     The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s); and

f.     The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to **18 U.S.C. § 1344 - Bank fraud; 18 U.S.C. § 1343 - Fraud by wire; 18 U.S.C. § 1028A - Aggravated identity theft; and 18 U.S.C. §§ 1956-57 - Laundering of monetary instruments**, including records that help reveal their whereabouts.

4

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by **AT&T**, and my title is

_____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of **AT&T**.  The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**.  I further state that:

a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of **AT&T**, and they were made by **AT&T** as a regular practice; and

b.    such records were generated by **AT&T's** electronic process or system that produces an accurate result, to wit:

1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of **AT&T** in a manner to ensure that they are true duplicates of the original records; and

2.    the process or system is regularly verified by **AT&T**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

5

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                             Signature